UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIQUITA FRESH, | No. C-11-06683 DMR |
| Plaintiff(s), | **ORDER DENYING DEFENDANT GREENE TRANSPORT COMPANY'S MOTION TO DISMISS AND GRANTING DEFENDANT JOHN GREENE LOGISTICS COMPANY'S MOTION TO DISMISS WITH LEAVE TO AMEND** |
| v. | |
| GREENE TRANSPORT, | |
| Defendant(s). | |

Defendants Greene Transport Company ("GTC") and John Greene Logistics Company ("JGLC") have filed separate motions to dismiss Plaintiff Chiquita Fresh North America, LLC's ("Chiquita") complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Chiquita opposes the motions. For the reasons provided below, the court denies GTC's motion to dismiss and grants JGLC's motion to dismiss, with leave to amend.

**I. Background and Procedural History**

On June 15, 2009, Chiquita and GTC entered into a carrier agreement ("Carrier Agreement") to govern the transportation services that GTC provides for Chiquita and its various products. (Compl. Ex. A.) On September 1, 2010, GTC hired a trailer truck without Chiquita's authorization to transport Chiquita pineapples. The trailer truck overturned on a Florida highway, killing two individuals ("the Accident"). (Compl. ¶¶ 22-23.) The decedents' representatives filed two wrongful death suits, now consolidated, in Florida ("the Florida Action") against the truck's driver; his

employer, Ajax Logistics, Inc. ("Ajax"); Chiquita; GTC, JGLC, and others. (Compl. ¶ 24.) As to Chiquita, the allegations assert that Chiquita overloaded the trailer, and did so in such a way that the load was likely to shift during transportation, which would cause or contribute to an accident during transportation. (Req. for Judicial Notice in Supp. of Def. GTC's Mot. to Dismiss Ex. 1 (Second Am. Compl.[1], *Holtzapple v. Ajax Logistics, Inc.* (Fla. Cir. Ct. 2012) (No. 10-CA-7095 AN (22)) ("Florida Action SAC"), ¶¶ 53-63, 118-135), Mar. 23, 2012.)[2]

On February 22, 2011, Chiquita entered into another contract with GTC ("February 22 Agreement"), in which GTC agreed that "pursuant to the June 13, 2009 contract, Greene Transport will continue to defend and indemnify Chiquita in all litigation arising out of th[e] accident." (Larsen Decl. Ex. A, Mar. 23, 2012; *accord* Compl. ¶¶ 20-21.) Soon after the commencement of the Florida Action, Chiquita tendered its defense and indemnity against the claims to GTC pursuant to the Carrier Agreement and February 22 Agreement. (Compl. ¶ 25.) According to Chiquita, GTC "refused to defend and/or indemnify" it against in the Florida Action (Compl. ¶ 26), and GTC's insurance carrier denied Chiquita coverage for the Florida Action claims (Compl. ¶ 27). Ajax's insurer also denied coverage for the claims and filed a declaratory relief action against Chiquita to clarify its coverage obligations arising out of the Accident. (Compl. ¶ 28.)

Chiquita brought the instant lawsuit against GTC and JGLC for breach of contract and for declaratory relief. The breach of contract claim asserts that GTC breached the Carrier Agreement and February 22 Agreement by 1) subcontracting the transportation of Chiquita products without Chiquita's prior written consent, 2) refusing to defend and/or indemnify Chiquita in the Florida Action, 3) refusing to defend and/or indemnify Chiquita against the declaratory relief action by Ajax's insurance carrier, 4) failing to ensure that Ajax would agree to defend and/or indemnify

---

[1] The court takes judicial notice of the second amended complaint filed in the Florida Action in accordance with Federal Rule of Evidence 201. That Rule states, in relevant part, that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

[2] The Second Amended Complaint in the Florida Action alleges a third-party beneficiary breach of contract claim against GTC for subcontracting to JGLC the transport of Chiquita cargo without Chiquita's prior written agreement. (Florida Action SAC ¶¶ 150-73.) It also alleges that JGLC negligently selected, hired, and retained Ajax. (Florida Action SAC ¶¶ 174-89.)

1 Chiquita, 5) failing to obtain, maintain, and provide the insurance coverage required in the Carrier
2 Agreement, and 6) failing to ensure that Ajax had obtained, maintained, and provided the insurance
3 coverage required by the Carrier Agreement. (Compl. ¶ 31; *see* Compl. ¶¶ 30-38.) Chiquita's
4 declaratory relief claim seeks a judgment declaring that GTC is, *inter alia*, liable to Chiquita for
5 damages attributable to GTC's breach of the Carrier Agreement and February 22 Agreement,
6 including attorneys' fees and costs, indemnification, and interest. (Compl. ¶¶ 39-42.) GTC and
7 JGLC respectively move to dismiss Chiquita's complaint for failing to state a claim upon which
8 relief can be granted.

## II. Standard of Review

When reviewing a motion to dismiss for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). In other words, the facts alleged to demonstrate an "entitle[ment] to relief require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2005) (brackets in original) (quotation marks omitted) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) ("Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." (citation omitted)).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 689 (citation and quotation marks omitted). However, the court may consider extrinsic evidence without converting the motion into a motion for summary judgment in two circumstances. *Id.* (citation omitted); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the

3

court, the motion must be treated as one for summary judgment under Rule 56."). First, the court may examine "material which is properly submitted as a part of the complaint," such as the Carrier Agreement. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). If a document's authenticity is not contested and the complaint "necessarily relies" on it, the court may take that document, such as the February 22 Agreement, into account even if it is not physically attached to the complaint. *Id.* (citation and quotation marks omitted). Second, the court may take judicial notice of "matters of public record," such as prior court proceedings, pursuant to Federal Rule of Evidence 201. *Id.* at 688-89 (citation and quotation marks omitted); *see Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002).

### III. Greene Transport Company's Motion to Dismiss

#### A. GTC's Arguments

GTC contends that Chiquita has failed to state a claim against it because the Carrier Agreement's defense, indemnity, and insurance provisions, which form the bases of Chiquita's claims, "do not apply to defense, indemnity or insurance coverage of allegations of Chiquita's own direct negligence" under California or Ohio law. (Def. GTC's Mot. to Dismiss ("GTC Mot. Dismiss") 2; *accord* GTC Mot. Dismiss 10.) Because those provisions do not apply, GTC reasons, it did not breach the contract.

#### 1. The Defense and Indemnity Clause

GTC insists that the Carrier Agreement's defense and indemnity clause "only applies to the conduct of GTC and its subcontractors — not [to the conduct] of Chiquita." (GTC Mot. Dismiss 11.) In other words, GTC believes that it would have to indemnify and defend Chiquita if Chiquita were sued for GTC's or JGLC's actions, but that GTC has no obligation to indemnify or defend Chiquita for Chiquita's alleged behavior. Therefore, according to GTC, the Florida Action, which alleges claims against multiple defendants, brings claims against Chiquita only for its own negligence and therefore does not invoke the clause. GTC thus argues that it did not breach the Carrier Agreement by refusing to defend or indemnify Chiquita in the Florida Action or Ajax's declaratory relief action, or by failing to ensure that Ajax agreed to defend and indemnify Chiquita.

GTC additionally asserts that Florida's abolition of joint and several liability in negligence actions, *see* Fla. Stat. § 768.81, relieves it of any obligations set forth in the defense and indemnity provision. Florida's contributory negligence law ensures that "[t]here is . . . no possibility that Chiquita will be made to satisfy a judgment for the [Florida Action] to any greater extent than its . . . alleged degree of fault." (GTC Mot. Dismiss 9; *accord* GTC Mot. Dismiss 10.) Therefore, according to GTC, Chiquita cannot be held liable for GTC or GTC's subcontractor's actions – the only events that would trigger the clause.

Finally, GTC argues that California law would render void as contrary to public policy "any construction" of the indemnity clause that would have GTC indemnify Chiquita for the latter's "sole" negligence. (GTC Mot. Dismiss 10 (citing Cal. Civ. Code § 2784.5[3]).) GTC concedes that there is no such public policy prohibition in Ohio. (GTC Mot. Dismiss 10-11.) Finally, GTC argues that the February 22 Agreement does not modify the Carrier Agreement, but merely reaffirms its terms and has no effect on its contractual duties toward Chiquita. (GTC Mot. Dismiss 13.)

**2. The Insurance Provisions**

GTC argues that the insurance provision, when read in conjunction with the defense and indemnity article, does not require GTC to maintain insurance to safeguard Chiquita against its own negligence. "[T]he entirety of the Agreement, in its unambiguous language, shows that the intent of the parties was that the additional-insured endorsements would be restricted to instances where Chiquita was allegedly liable for GTC's own conduct." (GTC Mot. Dismiss 14.) According to

---

[3] Section 2784.5 of the California Civil Code states:
Any provision, promise, agreement, clause, or covenant contained in, collateral to, or affecting any hauling, trucking, or cartage contract or agreement is against public policy, void and unenforceable if it purports to indemnify the promisee against liability for any of the following damages which are caused by the sole negligence or willful misconduct of the promisee, agents, servants, or the independent contractors directly responsible to the promisee, except when such agents, servants, or independent contractors are under the direct supervision and control of the promisor:
(a) Damages arising out of bodily injury or death to persons.
(b) Damage to property.
(c) Any other damage or expense arising under either (a) or (b).
This section shall not affect the validity of any insurance contract, workmen's compensation insurance contract, or agreement issued by an admitted insurer as defined by Sections 23 and 24 of the Insurance Code or insurance effected by surplus line brokers under Sections 1760 through 1780 of the Insurance Code.
Cal. Civ. Code § 2784.5.

GTC, interpreting the clause otherwise would conflict with the limited defense and indemnity obligations that GTC proffers above. (GTC Mot. Dismiss 14.) In accordance with this understanding, GTC maintains that it did not breach the Carrier Agreement by not having insurance that covered losses resulting from Chiquita's alleged negligence.

With respect to the insurance requirements of GTC's subcontractors, GTC argues that it has no obligation to indemnify Chiquita in the current action because Ajax maintained insurance, as evidenced by the declaratory relief action that Ajax's insurance company filed against Chiquita. (GTC Mot. Dismiss 15.)

### B. Applicable Law

#### 1. Choice of Law

The Carrier Agreement stipulates that any action brought under it will be governed by Ohio law:

> The provisions of this Agreement shall be construed and enforced according to the laws of the State of Ohio, without giving effect to principles of conflict of laws, to the extent that the former are not inconsistent with the applicable federal or state regulatory laws binding upon [GTC]. All controversies and claims arising hereunder, and all actions and proceedings to enforce this Agreement, shall be brought in the State of California.

(Compl. Ex. A at 10.)

Because the court exercises diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, it applies the law of the forum state, California, to determine whether to enforce the contractual choice of law provision. *See Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). California courts generally apply the principles in section 187 of the Restatement of Contracts to evaluate the enforceability of arm's-length contractual choice of law provisions:

> the proper approach . . . is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue. . . . If California has a materially greater

6

interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Nedlloyd Lines B.V. v. Super. Ct. of San Mateo Cnty.*, 3 Cal. 4th 459, 466 (1992) (footnotes omitted).

As GTC concedes, because this case is in the pleading stage, and the parties have not developed the record, the court lacks sufficient information to determine whether Ohio has a substantial relationship to the parties or their transaction. The court cannot perform a choice of law analysis and must examine the contracts at dispute under California and Ohio law. The court thus may dismiss Chiquita's claims only if Chiquita has failed to raise a viable claim under both states' laws. Stated differently, the court must deny GTC's motion to dismiss if Chiquita has presented a claim upon which it could obtain relief pursuant to either California or Ohio law.

**2. Contract Law in California and Ohio**

California and Ohio contract law command that a court examine a contract as a whole so as to reasonably give effect to every part and give life to the intent of the parties. Cal. Civ. Code §§ 1641, 1636; *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 33, 35 (Ohio 2007); *Palp, Inc. v. Williamsburg Nat'l Ins. Co.*, 200 Cal. App. 4th 282, 290 (2011); *see Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 566 (9th Cir. 1988) ("The normal rule of construction . . . is that courts must interpret contracts, if possible, so as to avoid internal conflict." (citations omitted)). When a contract's language is clear, the court will look only to that language to discern the parties' intent. Cal. Civ. Code § 1638; *Cincinnati Ins. Co.*, 875 N.E.2d at 34; *Palp, Inc.*, 200 Cal. App. 4th at 290.

Along with having similar cannons of contract interpretation, California and Ohio have identical elements for making a breach of contract claim: (1) a contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) resulting damages.[4] *Reichert v. Gen Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1266 (Ohio Ct. App. 1996).

---

[4] GTC does not question the first two elements of Chiquita's breach of contract claims.

7

**C. Discussion**

**1. The Defense and Indemnity Clause**

GTC may prevail on this issue at the pleadings stage only if it offers an unambiguous and definitive reading of the Carrier Agreement's defense and indemnity provisions that would preclude Chiquita's claims. If it fails to do so, then dismissal of the claims against GTC at this juncture is inappropriate.[5] The relevant provision of the Carrier Agreement, entitled "INDEMNITY," commands the following:

> [GTC] shall indemnify, defend and hold Chiquita . . . harmless from and against all damages, losses, costs, claims, injunctive relief, fines, penalties, settlements, charges and expenses (including attorneys' fees, expenses, disbursements and court costs), and all other expenses *relating to or arising from all claims* of every nature or character (*including*, without limitation, claims for personal injury, *death* and damage to property) . . . *arising out of or in connection with the loading, handling, transportation, unloading or delivery of any shipment under this Agreement by [GTC] or any substitute service provider* providing transportation services to Chiquita pursuant to this Agreement.

(Compl. Ex. A at 5 (emphasis added).) GTC argues that this clause has not been invoked because Chiquita is being sued in Florida for Chiquita's negligence, rather than the negligence of GTC or its substitute service provider (in this case, Ajax). In this way, GTC appears to argue that the duty to indemnify and defend Chiquita is triggered by the nature of the alleged *conduct* at issue (i.e., whether Chiquita is being sued for its own negligence, as opposed to the conduct of GTC or Ajax). However, such a reading ignores language suggesting that GTC's duty is triggered by the nature of the *event* -- that is, whether a claim "arise[s] out of or in connection with" transportation or delivery of any shipment by GTC or any substitute service provider. *See Bachrach v. Cornwell Quality Tool Co.*, No. 25444, 2011 WL 2040865, at *7 (Ohio Ct. App. May 25, 2011) (noting breadth of terms "arising out of" and "in connection with" in Ohio contract law); *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328 (1999) (holding that "arising out of" "connotes only a minimal causal connection or incidental relationship"). Since the Accident "arose out of or in connection with" GTC's substitute service provider's transportation of a Chiquita shipment, such a reading

---

[5] Because of the early procedural posture of the case, the court examines the contract language solely in order to determine whether the interpretation offered by GTC is conclusive. This order should not be construed as containing rulings regarding contract interpretation beyond that narrow inquiry.

8

would encompass the Florida Action's claims even though the suit alleges that Chiquita's negligence, among others', caused the Accident.

For the same reason, Florida's abolition of joint and several liability would have no effect on activation of the clause. Under the interpretation set forth above, it is the event that gave rise to the Florida Action – and not the type of liability which Chiquita may ultimately face – that would drive the application of the indemnity clause. Finally, that the Carrier Agreement potentially could cause GTC to defend and/or indemnify Chiquita for its own negligence is of no moment under Ohio law. *See Beaver Adhesives, Inc. v. Ashland, Inc.*, No. 03AP-1193, 2004 WL 1795320, at *5 (Ohio Ct. App. Aug. 12, 2004) (not reported in N.E.2d) (holding that duty to defend clause applying to "all" claims encompasses negligence); *Coulter v. Dayton Power & Light Co.*, 731 N.E.2d 1172, 1175 (Ohio Ct. App. 1999) (holding that duty to indemnify party for damages arising from party's negligence not against public policy). Because GTC's interpretation of the clause does not unambiguously validate its refusal to defend and/or indemnify Chiquita in the Florida Action and the declaratory action by Ajax's insurance carrier, Chiquita has properly alleged a claim for a breach of contract.

For similar reasons, Chiquita's complaint sets forth valid claims against GTC for failing to ensure that its agreement with Ajax contained Ajax's agreement to defend and indemnify Chiquita. The second half of the Carrier Agreement's INDEMNITY article states that:

> Without limiting the generality of the foregoing, [GTC] agrees that *if [GTC] uses a substituted service for the transport of any Goods for or on behalf of Chiquita*, [GTC]'s agreement with such substitute service provider shall contain the substitute service provider's agreement to indemnify, defend and hold Chiquita and its agents and employees harmless from and against all indemnified Claims arising out of or in connection with the loading, handling, transportation, unloading or delivery of any shipment under this Agreement by the substitute service provider.

(Compl. Ex. A at 5 (emphasis added).) Contrary to GTC's interpretation, the text reasonably could indicate that GTC's obligations under this section activate when a claim arises out of or in connection with substituted service transport of any Chiquita goods – exactly what Chiquita alleges in its complaint (Compl. ¶ 22). Under that reading, if GTC failed to ensure that its contract with Ajax contained the requisite defense and indemnity provisions, which the Florida Action potentially triggered, *see supra*, GTC would have breached the contract.

9

### 2. The Insurance Clauses

GTC does not proffer a definitive interpretation of the Carrier Agreement's insurance clauses that would exempt it from the provisions' obligations in the Florida Action. The apposite section requires GTC to do the following:

> At all times during the term of this Agreement, [GTC] shall maintain and keep in force the following insurance coverage: (A) General Liability Insurance for Comprehensive and Contractual Coverage . . . . Chiquita and its Affiliates shall be named as additional insureds. There may be no self insured retention or deductible without the prior written consent of Chiquita. (B) Automobile Liability for non-owned autos . . . . Chiquita and its Affiliates shall be named as additional insureds. There may be no self insured retention or deductible without the prior written consent of Chiquita.

(Compl. Ex. A at 7.) Again, GTC argues that this clause, particularly when read in conjunction with the defense and indemnity article, does not require it to maintain insurance to safeguard Chiquita against its own negligence. (GTC Mot. Dismiss 14.) However, the text can be read to require GTC to maintain insurance with Chiquita as an additional insured "[a]t all times" and could be understood to mean that the called-for insurance coverage applies to accidents arising from Chiquita's alleged wrongful conduct. For example, Ohio law recognizes that such additional insured insurance provisions may encompass the additional insured's negligence without expressly incorporating negligence into the contract. *See Brzeczek v. Standard Oil Co.*, 447 N.E.2d 760, 762-64 (Ohio Ct. App. 1982). Consequently, at least under Ohio law, one could interpret the insurance provision to require that GTC have insurance that covers Chiquita's negligence. Chiquita therefore has stated a valid claim against GTC for breach of contract for failing to obtain, maintain, and provide the insurance coverage required in the Carrier Agreement.

For similar reasons, Chiquita has stated a claim for which it may obtain relief against GTC for failing to ensure that Ajax obtained, maintained, and provided the insurance coverage required by the Carrier Agreement. The relevant contractual provision states that:

> [GTC] represents and warrants that any subcontractors utilized by [GTC] shall maintain insurance coverage in the minimum amounts set forth in this Agreement, and [GTC] agrees to indemnify and hold Chiquita harmless from and against any loss or liability incurred by Chiquita arising from the failure of any subcontractor of [GTC] to maintain said insurance in accordance with this Section . . . .

10

(Compl. Ex. A at 7-8). This clause appears to require that GTC ensure that any subcontractor that it hires has the same insurance coverage with respect to Chiquita that GTC must have under the contract. If the subcontractor does not maintain the prescribed insurance, GTC would breach its duty to ensure that the subcontractor maintains such insurance and would have to indemnify Chiquita for losses arising from that failure. Because GTC has not provided a definitive reading of the clause, and it remains unclear what insurance coverage Ajax held at the time of the Accident, Chiquita has properly alleged that GTC breached its contractual duty to Chiquita with respect to its subcontractor's insurance coverage.

Because Chiquita has stated claims upon which relief can be granted for all of the claims which GTC has challenged in its motion, the court denies GTC's motion to dismiss.[6]

## IV. John Greene Logistics Company's Motion to Dismiss

### A. JGLC's Arguments

JGLC seeks dismissal of Chiquita's claims against it based on the lack of a contract between them and on the general absence of any allegations against the company in the complaint. JGLC notes that it is not a party to the Carrier Agreement or the February 22 Agreement, and is not even mentioned in either. (JGLC Mot. Dismiss 2, 4.) In fact, JGLC asserts that no contract exists between it and Chiquita, and Chiquita has alleged none in its complaint. (JGLC Mot. Dismiss 4.) Without a contract, Chiquita cannot state a proper breach of contract claim. (JGLC Mot. Dismiss 4.) JGLC insists that Chiquita's declaratory relief action likewise must fail, because it is premised on the existence of a contract between the parties. (JGLC Mot. Dismiss 5-6.)

### B. Chiquita's Rebuttal

Chiquita responds by highlighting that it characterizes GTC and JGLC as "related" entities in its complaint. (Chiquita's JGLC Opp'n 3; *see* Compl. ¶ 3.) Chiquita urges the court to interpret this assertion to mean that Chiquita pled that GTC and JGLC are "a single entity" or have a principal-agent relationship. (Chiquita's JGLC Opp'n 3.) These inferences would make Chiquita's claims against GTC valid against JGLC as well. (Chiquita's JGLC Opp'n 3.) To buttress its argument,

---

[6] Because Chiquita has stated valid claims against GTC pursuant to the Carrier Agreement, the court need not examine the significance of the February 22 Agreement at this time.

11

Chiquita asks the court to take judicial notice of several documents, including GTC's and JGLC's annual reports and screen shots of the firms' websites, which Chiquita believes demonstrate the alter ego and/or principal-agent relationship between them. (*See* Chiquita's Req. for Judicial Notice Exs. 1-4, Apr. 4, 2012.)

**C. Applicable Law**

As noted in the court's analysis of GLC's motion to dismiss, the sparse record of this case prevents the court from performing a choice of law analysis. The court therefore must examine California and Ohio law to resolve this motion. Both states recognize doctrines that allow a nonsignatory to a contract to be bound by its terms, such as the presence of a principal-agent relationship or the demonstration that a nonsignatory is the alter ego of a signatory. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003); *Tolbert v. Coast to Coast Dealer Servs., Inc.*, 789 F. Supp. 2d 811, 817 (N.D. Ohio 2011). To satisfy the agency test under California law, a plaintiff must allege a "relationship which results from the manifestation of consent by one [entity] to another that the other shall act on [its] behalf and subject to [its] control, and consent by the other so to act. The principal must in some manner indicate that the agent is to act for [it], and the agent must act or agree to act on his behalf and subject to [its] control." *Van't Rood v. Cnty. of Santa Clara*, 113 Cal. App. 4th 549, 571 (2003) (citations and quotation marks omitted). Similarly, in Ohio, "the relationship of principal and agent . . . exists . . . when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks." *Eagle v. Owens*, No. C-060446, 2007 WL 1574616, at *4 (Ohio Ct. App. June 1, 2007) (not reported in N.E.2d) (footnote omitted). To prove that an entity is the alter ego of another under California law, a plaintiff must make a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Harris Rutsky & Co. Ins. Servs., Inc.*, 328 F.3d at 1134 (brackets in original) (citation and quotation marks omitted). Under Ohio law, the plaintiff must allege that

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Trinity Health Sys. v. MDX Corp.*, 907 N.E.2d 746, 753-54 (Ohio Ct. App. 2009) (citation and quotation marks omitted).

### D. Discussion

Chiquita has not properly stated a claim against JGLC in its complaint. The complaint refers to JGLC only one time, as a business "related to" GTC. (Compl. ¶ 3.) There are no other factual assertions about JGLC or any legal claims made against it. Chiquita attempts to remedy this absence by characterizing the phrase "related to" as indicating that GTC and JGLC have a principal-agent relationship or are the alter egos of each other, and presents various website screen shots and annual reports to support its claim. (Chiquita JGLC Opp'n 3-6; *see* Chiquita's Req. for Judicial Notice.) The court declines to take notice of these materials. The annual reports and company website screen shots are not "generally known" within the Northern District of California, and JGLC reasonably contests their veracity (*see* JGLC Reply 3). Fed. R. Evid. 201(b); *see Lee*, 250 F.3d at 689. Furthermore, although the Supreme Court has held that a court may consider a party's brief to "clarify allegations" in the complaint, *Pergam v. Herdrich*, 530 U.S. 221, 230 & n.10 (2000), Chiquita's proposal exceeds the bounds of mere clarification. *See, e.g.*, *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 428 n.8 (3d Cir. 1999) (finding that party filed claim in bankruptcy proceeding, even though complaint did not state such fact, because complaint stated facts possible only if that party had filed bankruptcy proceeding claim); *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (using reply brief to clarify ambiguous language in complaint as to whether claim was timely). Because Chiquita has asserted no claim against JGLC, the court dismisses Chiquita's complaint with respect to JGLC without prejudice. *See Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001).

### V. Conclusion

13

For the reasons above, the court denies Greene Transport Company's motion to dismiss and grants John Greene Logistics Company's motion to dismiss, with leave to amend. Chiquita must file any amended complaint by May 30, 2012.

IT IS SO ORDERED.

Dated: May 11, 2012



_____
DONNA M. RYU
United States Magistrate Judge

**United States District Court**
For the Northern District of California