UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIQUITA FRESH, | No. C-11-06683 DMR |
| Plaintiff(s), | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR BREACH OF CONTRACT DAMAGES [DOCKET NO. 72]** |
| v. | |
| GREENE TRANSPORT, | |
| Defendant(s). | |

On June 7, 2013, this court granted in part a motion for summary judgment by Plaintiff Chiquita Fresh North America L.L.C. ("Plaintiff" or "Chiquita") and held that Defendant Greene Transport Company ("GTC") breached the parties' Carrier Agreement by failing to defend Chiquita in a Florida lawsuit in which Chiquita was named a defendant. *See* Order on Mot. Summ. J. ("MSJ Order") [Docket No. 65]. The court also held that Chiquita was entitled to damages stemming from GTC's breach of contract, including attorneys' fees and costs incurred in its defense of the Florida lawsuit and in bringing the instant lawsuit against GTC to enforce the indemnity and defense provision of the Carrier Agreement. MSJ Order at 23. Chiquita now moves for a determination of the damages resulting from GTC's breach of contract.[1] [Docket No. 72.]

---

[1] The court granted summary judgment only against GTC, and noted that "[s]ummary judgment against JGLC [Defendant John Greene Logistics Company] is inappropriate because it has not yet been determined whether JGLC is GTC's alter ego." MSJ Order at 23 n. 16. Nonetheless, the court permitted JGLC to oppose Chiquita's motion for breach of contract damages, which JGLC has done.

# I. BACKGROUND

The court found the following facts in its summary judgment order. *See generally* MSJ Order 2-6.

## A. Carrier Agreement

Chiquita and GTC entered a Carrier Agreement through which GTC agreed to transport Chiquita's products. The Carrier Agreement became effective June 15, 2009, and was in effect on the dates relevant to this case, namely August 31, 2010 and September 1, 2010. The Indemnity and Defense provision of the Carrier Agreement requires GTC to defend and indemnify Chiquita under certain circumstances:

> INDEMNITY. [GTC] shall indemnify, defend and hold Chiquita . . . harmless from and against all damages, losses, costs, claims, injunctive relief, fines, penalties, settlements, charges and expenses (including attorneys' fees, expenses, disbursements and court costs), and all other expenses relating to or arising from all claims of every nature or character (including, without limitation, claims for personal injury, death and damage to property) . . . arising out of or in connection with the loading, handling, transportation, unloading or delivery of any shipment under this Agreement by [GTC] or any substitute service provider providing transportation services to Chiquita pursuant to this Agreement.

[Docket No. 53-1, Ex. A at art. 6.] The Carrier Agreement also states that its provisions shall be construed according to Ohio law, and that claims arising under it shall be brought in California:

> Governing Law. The provisions of this Agreement shall be construed and enforced according to the laws of the State of Ohio, without giving effect to principles of conflict of laws, to the extent that the former are not inconsistent with the applicable federal or state regulatory laws binding upon Carrier. All controversies and claims arising hereunder, and all actions and proceedings to enforce this Agreement, shall be brought in the State of California.

*Id.* at ¶ 13.3.[2]

## B. The September 1, 2010 Accident

On or about August 31, 2010, Chiquita requested that GTC pick up a load consisting of 20 pallets of pineapples in Port Everglades, Florida and deliver them the following day to Forest Park, Georgia. GTC's own truck was unavailable, so GTC used its related company, JGLC, to broker another carrier. JGLC hired Ajax Logistics, Inc. ("Ajax") to transport the pineapples. On August

---

*See* Docket Nos. 68, 80.

[2] The court has previously upheld this contractual choice of law provision and found that Ohio law applies to this case. *See* MSJ Order at 13.

31, 2010, Ajax transported the load out of the Port Everglades facility. On September 1, 2010, in the course of transporting the load, Ajax had an accident in Osceola County, Florida, which resulted in the deaths of Cassandra Green and her son, Steven Holtzapple, Jr. The personal representatives of the decedents filed wrongful death actions in Florida state court, eventually naming Chiquita, GTC, JGLC, Ajax, the driver and the purported owner of the truck as defendants in lawsuits that have since been consolidated. *See Holtzapple v. Ajax et al.*, Case No. 10-CA-7095 AN (22) (Fla. Cir. Ct. Feb. 6, 2012) ("the Florida Action").

## C. GTC's Agreement to Defend and Indemnify Chiquita in the *Castlepoint* Action

On or about November 21, 2010, Ajax's insurer Castlepoint Insurance Company ("Castlepoint") filed a declaratory judgment action against Chiquita and all potential plaintiffs and defendants in the Florida Action seeking declaratory judgment that Castlepoint owed no defense or indemnity obligation for any monies relating to the Accident. *Castlepoint National Ins. Co. v. Ajax Logistics, Inc., et al.*, Case No. 10-CV-62266-MGC (S.D. Fla. [N.D.] 2010) ("the *Castlepoint* Action").

On February 8, 2011, Chiquita's counsel wrote the following to GTC's counsel: "As per our conversations from last week, this confirms you are defense counsel for my client . . . in the [*Castlepoint* Action] and that this defense will be paid for by Greene Transport . . . . Please confirm that pursuant to the [Carrier Agreement], Greene Transport will continue to defend and indemnify Chiquita in all litigation arising out of this accident." The letter requested that GTC's counsel "sign the bottom of this letter as confirmation of this agreement." GTC's counsel signed the bottom of the letter on February 22, 2011, and returned it with a cover letter stating: "Enclosed please find your February 8, 2011 letter which has been executed regarding Greene Transport's agreement to continue to defend and indemnify Chiquita in all litigation arising out of this accident."

## D. GTC and Northland's Refusals to Defend and Indemnify Chiquita In the Florida Action

Chiquita was served with the Florida Action wrongful death suit in September of 2011. On September 13, 2011, Chiquita tendered its defense and indemnity for the Florida Action to GTC pursuant to the Carrier Agreement, and to GTC's insurer, Northland. On September 20, 2011, Northland denied that Chiquita was an additional insured and refused to defend or indemnify Chiquita. On October 5, 2011, GTC denied Chiquita's tender and has refused to defend or

3

1  indemnify Chiquita. On February 14, 2012, after learning that Northland was defending GTC in the
2  Florida Action, Chiquita re-tendered its defense to Northland. That re-tender was denied on March
3  15, 2012.

### E. Order on Motion for Summary Judgment

On March 25, 2013, Chiquita filed a motion for summary judgment. [Docket No. 53.] On June 7, 2013, this court granted in part the motion for summary judgment, holding that the "plain language of the Indemnity and Defense Provision requires GTC to defend Chiquita in the Florida Action, and GTC breached the Carrier Agreement by failing to do so and failing to ensure that Ajax do the same." MSJ Order at 19. The court also held that Chiquita was "entitled to damages stemming from [GTC's] breaches of contract," including "attorneys' fees and costs incurred in its defense of the Florida Action and in bringing the instant lawsuit against GTC to enforce the Indemnity and Defense Provision." MSJ Order at 23.

## II. LEGAL STANDARD

"The general precept in breach-of-contract actions . . . [is that] [m]oney damages awarded in a breach of contract action are designed to place the aggrieved party in the same position it would have been in had the contract not been violated." *State ex rel. Stacy v. Batavia Local Sch. Dist. Bd. of Edn.*, 829 N.E.2d 298, 305 (Ohio 2005) (citations omitted); *see also Portsmouth Clay Products Co. v. Russell*, 10 Ohio Law Abs. 464, 465 (Ohio Ct. App. 1931) ("The measure of damages in case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it has entailed. In other words, the person injured is, so far as it is possible to do so, to be placed in the position he would have been had the contract been performed.").

Here, the contract provision that was breached required GTC to defend Chiquita against all claims arising out of or in connection with the loading, handling, transportation, unloading or delivery of any shipment under the Carrier Agreement. GTC failed to do so, and Chiquita brought the instant litigation. Thus, part of the contract damages that Chiquita seeks are attorneys' fees it incurred in defending the Florida Action and pursuing its contractual indemnity rights via this lawsuit. *See Allen v. Standard Oil Co.*, 443 N.E.2d 497, 500 (Ohio 1982) ("[W]hen an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs,

4

including attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating its rights to indemnity in a third-party action brought against the indemnitor" because "the [indemnitee] must be put in a position as good as that which he would have occupied if the [indemnitor] had performed its duty [to defend and indemnify]"); *see also Goodyear Tire & Rubber Co. v. G4S Secure Solutions (USA), Inc.*, Case No. 11-CV-01170-BYP, 2013 WL 256938 at *7 (N.D. Ohio Jan. 23, 2013) (granting summary judgment on breach of contract and declaratory judgment action where contracting party wrongfully withdrew its defense and indemnification of other party, and awarding as contract damages "the costs incurred in this litigation to seek enforcement of the indemnification agreement").

When a party is entitled to an award of attorneys' fees, the District Court has power to award them. *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983). The amount of the award and whether to award attorneys' fees is within the court's discretion. *Bittner v. Tri-County Toyota, Inc.*, 569 N.E.2d 464, 467 (Ohio 1991) ("It is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court.").

When determining the amount of attorneys' fees, the court undertakes a two-step analysis. *Miller v. Grimsley*, 966 N.E.2d 932, 937 (Ohio Ct. App. 2011). First, the court calculates the "lodestar" by multiplying the proven number of hours reasonably expended by the reasonable hourly rate. *Id.* The attorneys' time must be fairly and properly used. *Freeman v. Crown City Mining, Inc.*, 630 N.E.2d 19, 24. Therefore, calculation of the "lodestar" requires exclusion of any hours unreasonably expended such as hours that are redundant, unnecessary, or excessive in relationship to the work done. *Miller*, 966 N.E.2d at 937. The party seeking the award should submit evidence supporting the hours worked and the rates claimed. *Hensley*, 461 U.S. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. A reasonable hourly rate is reflected by the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "[T]he burden is on the fee

applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Se. Land Dev., Ltd. v. Primrose Mgt. L.L.C.*, 193 Ohio App. 3d 465, 477, 952 N.E.2d 563, 573 (Ohio Ct. App. 2011) (quoting *Blum v. Stenson* (1984), 465 U.S. 886, 895-896 n. 11).

Second, the court applies eight factors governing the reasonableness of attorneys' fees pursuant to Ohio Rule of Professional Conduct 1.5(a) in determining whether to adjust the lodestar. *Id.* These factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that acceptance of particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. Ohio R. Prof. Cond. 1.5(a). These two steps may overlap because several reasonableness factors are subsumed within the lodestar calculation. *Miller*, 966 N.E.2d at 937. Therefore, the presence of a factor alone will normally not provide an independent basis for adjusting the fee award. *Id.*; *Freeman*, 630 N.E.2d at 27; *Blum*, 465 U.S. at 900. "The trial court has the discretion to determine which factors to apply and in what manner such application will affect the initial calculation." *Parks v. Kanani*, 10th Dist. No. 01AP-905, 2002-Ohio-1316, 2002 WL 433641 at *2 (Ohio Ct. App. Mar. 21, 2002) (citing *Bittner*, 569 N.E.2d at 145-46).

## III. ANALYSIS

Chiquita requests that the court award the following expenses as damages arising out of GTC's breach of contract: (1) expenses associated with defending Chiquita in the Florida Action; (2) expenses associated with Chiquita's third party complaint for equitable subrogation against GTC and JGLC in the Florida Action; and (3) expenses incurred by the Burnham Brown law firm, which is representing Chiquita in this lawsuit. GTC and JGLC's objections to each of these categories of expenses will be considered below.

6

**A. Defense in Florida Action (Cameron, Hodges)**

Chiquita has paid $70,958 to the law firm of Cameron, Hodges, Coleman, LaPointe & Wright, P.A. through April 30, 2013 to defend itself in the Florida Action. Cameron Decl. [Docket No. 74] ¶¶ 2-3. Craig Cameron, a partner with the Cameron, Hodges firm and Chiquita's counsel of record in the Florida Action, is an attorney licensed in the state of Florida who has been practicing law since 1973. *Id.* at ¶ 1. The Cameron, Hodges firm charges a hourly rate of $175 for partners and $85 for paralegals. Cameron states that "[b]ased on [his] years of experience defending personal injury claims in Florida, this hourly rate is very reasonable, particularly given the complexity of the pending double wrongful death claims . . . ." *Id.* at ¶ 4.

With respect to the reasonableness of the rates charged by the attorneys in this damages request, Chiquita cites *Schraff & King, Co., L.P.A. v. Casey*, 983 N.E.2d 882 (Ohio Ct. App. 2012) in support of Chiquita's assertion that "[a]n attorney's declaration is sufficient to show that the firm's hourly rate is reasonable for the locality." Mot. at 3. However, *Schraff* involved an attorney who brought a breach of contract action against a former client for the client's failure to pay for the attorney's services in a probate matter. The court held a three-day bench trial, during which the attorney testified about the nature of her representation and "gave an extended explanation of the various work which was completed for [the client]." *Schraff*, 983 N.E.2d at 886. Under these circumstances, the *Schraff* court found that "[t]aken as a whole, the testimony of Attorney Schraff was sufficient to show that the firm's hourly rate of $190 was reasonable for the locality." *Id*. at 890. Other than the declarations of the attorneys stating that their rates are reasonable for the nature of the claims and the locality, Chiquita has offered nothing (e.g. no case citations) to support the reasonableness of their attorneys' hourly rates. However, neither GTC nor JGLC contested the reasonableness of the hourly rates charged by Chiquita's attorneys. The court finds that the rates charged by the Cameron, Hodges firm are reasonable. *See Household Fin. Corp. v. Porterfield*, 263 N.E.2d 243, 248 (Ohio 1970) (issue alluded to in oral argument and briefs to the court but not presented to the court as a proposition of law and argued as such is deemed to be abandoned).

GTC and JGLC contend that the invoices[3] submitted by the Cameron, Hodges firm are so

---

[3] Chiquita requests that the court take judicial notice of billing invoices from its attorneys. The court declines to do so, as they do not present the kinds of facts that may be judicially noticed. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because

7

heavily redacted that they and the court are unable to determine what tasks the firm performed and whether they were reasonable and necessary for Chiquita's defense. JGLC approximates that $23,712 of the $70,958 in expenses Chiquita seeks for this work, representing 182.4 hours of work, can be attributed to redacted billing entries. JGLC Opp. [Docket No. 80] at 5. Chiquita produced a privilege log addressing the redactions, but JGLC argues that the privilege log is insufficient because it uniformly describes all redacted subject matter as each law firm's "legal services to its client Plaintiff Chiquita Fresh North America." *See* Greene Decl. [Docket No. 74-3] Ex. E (Privilege Log) at 5-6.

After this motion was fully briefed, this court ordered Chiquita to lodge unredacted invoices for in camera review. [Docket No. 87.] Because Chiquita's redactions did not appear to be narrowly tailored to their claims of privilege, the court ordered Chiquita to redo the redactions and refile the invoices, and gave GTC and JGLC an opportunity to respond by requesting supplemental briefing. [Docket No. 88.] GTC and JGLC did not request supplemental briefing.

Based on the court's review of the unredacted invoices, Chiquita has offered detailed documentation in support of the hours charged by the Cameron, Hodges firm sufficient to enable the court to determine that such hours were actually and reasonably expended in the prosecution of Chiquita's defense in the Florida Action. The billing records contain detailed narrative descriptions of legal services performed by the Cameron, Hodges firm for Chiquita, the time spent on each service, the attorney or staff member performing the task, his or her hourly rate, and the general nature of and parties to correspondences. *See Hollingsworth v. Time Warner Cable*, 2006-Ohio-4903, 861 N.E.2d 580, 600 (Ohio Ct. App. 2006) (no abuse of discretion where trial court awarded attorneys' fees where attorney submitted evidence supporting the hours worked, including "detailed billing records that sufficiently justified the hours expended"); *Tonti v. Tonti*, No. 2004-Ohio-2529, 2004 WL 1109840 at * 22 (Ohio Ct. App. May 18, 2004) (evidence supports a finding of reasonableness where attorney testified that all bills submitted accurately represented time spent and bills were detailed accounting of work performed by attorneys); *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008) (noting that "counsel need not record in great detail each minute

---

it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

8

he or she spent on an item," but indicating that "the general subject matter should be identified") (quotations omitted). The court therefore awards Chiquita, as part of the damages resulting from GTC's breach of contract, the $70,958 it has paid to the Cameron, Hodges firm for its defense of Chiquita in the Florida Action.

**B. Third-party Equitable Subrogation Complaint in Florida Action (Fisher, Rushmer)**

Chiquita has paid $23,298.58 to the law firm of Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap P.A. through April 30, 2013 to prosecute third-party equitable subrogation claims against GTC and JGLC in the Florida Action. Kirsheman Decl. [Docket No. 74-2] ¶¶ 2-3. Jeffrey Kirsheman, a partner with the Fisher, Rushmer firm, is an attorney licensed in the state of Florida who has been practicing law since 1995. *Id.* at ¶ 1. The Fisher, Rushmer firm charges $250/hour for work done by partners and $200/hour for work done by associates. *Id.* at ¶ 4. Kirsheman states that "[b]ased on [his] years of experience defending personal injury claims in Florida, this hourly rate is very reasonable, particularly given the complexity of the pending double wrongful death claims . . . ." *Id.* at ¶ 4.[4]

On October 31, 2011, the Fisher, Rushmer firm filed a third-party complaint in the Florida Action on behalf of Chiquita, naming GTC and JGLC as third-party defendants. *See* Third Party Compl. [Docket No. 75, Ex. A].[5] The third-party complaint seeks indemnity and costs of defense from GTC and JGLC under equitable subrogation principles on the theory that GTC and JGLC's negligence harmed Chiquita. *Id*. at ¶¶ 23-27. In the third-party complaint, Chiquita alleges that GTC and/or JGLC negligently selected Ajax to carry the Chiquita load involved in the September 1, 2010 Accident, and, as a result of that negligence, Chiquita is entitled to damages. *Id.*

GTC argues that the third-party complaint attempts to vindicate Chiquita's equitable rights, not those arising from the Carrier Agreement's indemnity and defense provision, and thus are not

---

[4] GTC and JGLC did not argue that these rates were unreasonable. Accordingly, the court finds that these rates are reasonable. Furthermore, the rates appear to be in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation, e.g., the rates charged by the Cameron, Hodges firm.

[5] Pursuant to Chiquita's request, the court takes judicial notice of the third party complaint. It is a document not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

9

recoverable as damages for breach of contract.[6]  Furthermore, JGLC argues that the Carrier Agreement requires all controversies arising under the agreement to be brought in California under Ohio law, so "the appropriate course of action was for Chiquita to pursue this California action for defense and indemnity under Ohio law, not file two separate lawsuits in two different states requesting the same relief."  JGLC Opp. at 6-7.  Chiquita responds that it pursued the third party complaint in the Florida Action only because GTC and JGLC failed to abide by their contractual indemnity obligations.

Several factors counsel against granting Chiquita fees and costs incurred in Fisher, Rushmer's prosecution of the third-party complaint in the Florida Action.  First, the general measure of contract damages owed an indemnitee due to an indemnitor's breach of the duty to defend are the costs and attorney fees expended by the indemnitee defending the underlying action and the cost of pursuing the contractual indemnity action.  *See Allen*, 443 N.E.2d at 500 (indemnitor required to pay attorneys' fees incurred by indemnitee in defending the underlying action as well as in vindicating its contractual indemnity rights; holding also that this measure of damages is appropriate in both an insurance and non-insurance context); *see also City of Kirtland v. W. World Ins. Co.*, 540 N.E.2d 282, 286 (Ohio Ct. App. 1988) (insurer's "failure to perform this duty [to defend] entitled [insured] to recover . . . the cost of defending the suit and the cost of pursuing the present action").  The costs of the third party equitable subrogation complaint fall outside of this general measure of damages.

Second, to the extent that Chiquita asserts that the costs of the third party complaint were consequential damages of GTC's breach of its contractual duty to defend, "consequential or special damages in contract have been limited to those that are certain, foreseeable, and within the contemplation of the parties at the time the contract was entered into."  *Peterman v. Dimoski*, No. 2002-Ohio-7337, 2002 WL 31894859 at *4 (Ohio Ct. App. Dec. 31, 2002) (citing *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854)).  The parties did not cite to any cases in Ohio (or

---

[6]  "The doctrine of equitable subrogation is not created by a contract, but by the legal consequences of the acts and relationships of the parties. Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party.  As a result of equitable subrogation, the party discharging the debt stands in the shoes of the person whose claims have been discharged and thus succeeds to the right and priorities of the original creditor." *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999) (citations omitted).

elsewhere) in which a court found that the indemnitee's consequential damages for the indemnitor's breach of a contractual duty to defend included the costs of pursuing both contractual and equitable bases for indemnity, in separate cases with separate counsel. The court did not find any such cases in its own research, and declines to extend the law in this instance

Third, even assuming arguendo that Chiquita's costs of pursuing its equitable subrogation rights were consequential damages resulting from GTC's breach of contract, the next step in the damages analysis requires this court to look at the reasonableness of the attorneys' fees requested and exclude any hours unreasonably expended by Chiquita's attorneys, such as hours that are spent on unnecessary work. At the hearing, Chiquita's counsel conceded that the third party complaint was part of Chiquita's strategy to hedge its bets in pursuing all potential means of recovery against GTC for costs stemming from the September 1, 2010 Accident. The costs of this litigation strategy are not reasonable in this case, and should not be borne by Defendants.

Accordingly, the court declines to award Chiquita the $23,298.58 incurred by the Fisher, Rushmer firm as contract damages.

## C. Expenses incurred by Burnham Brown

Chiquita seeks fees and costs incurred by the law firm of Burnham Brown between September 2010 and May 31, 2013, totaling $229,203.31. The work performed by Burnham Brown for which Chiquita seeks reimbursement primarily involves Chiquita's pursuit of its indemnity rights in this lawsuit. Robert Bodzin, a partner with the Burnham Brown firm and Chiquita's counsel of record in this action, is an attorney who has been practicing law since 1992, when he obtained his New York law license, and since 1999 in California. Bodzin Decl. [Docket No. 74-1] at ¶ 1. Burnham Brown charges $250/hour for partners and $200/hour for associates, rates which have been in place with Chiquita and its related companies since 2005 and have been held and not raised as a courtesy to the client. *Id.* at ¶ 5. Bodzin states that these rates "are relatively low for the Bay Area, particularly for commercial litigation and given the complexity of the issues involved in this matter." *Id.* at ¶ 5.

### i. Expenses Incurred Between September 2010 and the Filing of This Complaint

Both GTC and JGLC argue that Chiquita's award of contract damages should not include work performed by Burnham Brown between the September 1, 2010 Accident and the time

11

1  immediately leading up to the filing of the complaint in this action on December 28, 2011.  JGLC
2  calculates such billing to total $33,998.18 in fees and costs.  *See* Docket No. 75, Ex. D, CFNA
3  000931-970.

4  Chiquita retained Burham Brown immediately after the accident to "investigate which entity
5  or entities were involved that may have an obligation to indemnify Chiquita."  Reply at 2.  Robert
6  Bodzin's declaration states that Burnham Brown's "work on the indemnity issues arising out of the
7  Florida accident started immediately after [Bodzin's] first notice of the accident on September 3,
8  2010.  From the outset, [Bodzin's] work involved unraveling the facts as to exactly what had
9  happened with the subject load, identifying the parties involved and pursuing Chiquita's indemnity
10 rights."  Bodzin Reply Decl. [Docket No. 82-1] at ¶ 5.  In addition to pursuing Chiquita's indemnity
11 rights in this lawsuit, Burnham Brown (1) investigated and attempted to procure the insurance
12 coverage maintained by Ajax's insurer, Castlepoint, which GTC apparently alleged would cover
13 Chiquita; (2) negotiated the agreement for GTC to pay the Liggio law firm to defend Chiquita in the
14 *Castlepoint* Action; and (3) investigated and made multiple tenders to GTC and Northland for all
15 wrongful deaths in the September 1, 2010 Accident.  Bodzin Decl. at ¶ 4.

16 Between September 3, 2010 and November 30, 2011, Burnham Brown billed roughly 80
17 hours of partner time and 60 hours for work by associates. The court has reviewed the billing entries.
18 They include work performed in analyzing the Carrier Agreement, the insurance contracts, and
19 pleadings from the Castlepoint litigation and the Florida action; communicating with insurers and
20 representatives for GTC, JGLC, and Ajax about indemnity, defense, and insurance; reports to
21 Chiquita about the same; and negotiating the Castlepoint defense provided by the Liggio law firm.
22 Bodzin Decl. at ¶ 4; Bodzin Reply Decl. at ¶¶ 4-5.  In November 2011, Burnham Brown began
23 drafting the complaint in this lawsuit, which it filed on December 28, 2011.  GTC contends that it
24 "understands that lawsuit-related costs can be reasonably incurred prior to the filing of the suit" but
25 that Chiquita's motion does not satisfy its burden of showing that the time between September 2010
26 and roughly December 2011 was fairly and properly used toward bringing this suit to enforce the
27 Indemnity and Defense provision.

28 The court concurs.  It is likely that much of the work Burnham Brown performed during this
time would have been performed regardless of whether GTC breached its duty to defend Chiquita in

12

the Florida Action, e.g., the firm's review of the pleadings in the *Castlepoint* and Florida actions, the Carrier Agreement, the bills of ladings, the insurance policies, the firm's summary reports to Chiquita on the same, and the negotiations with Defendants regarding the defense of Chiquita in the *Castlepoint* action. Chiquita was not even served in the Florida Action until September 2011. Northland refused Chiquita's tender of defense and indemnity for the Florida Action on September 20, 2011, and GTC refused on October 5, 2011. In the *Castlepoint* Action, GTC retained the Liggio firm to defend Chiquita and JGLC in February 2011 and the Liggio firm did defend Chiquita until November 2011, when JGLC accepted a settlement and the Liggio firm withdrew as counsel for Chiquita. Bodzin Reply Decl. at ¶ 4. Chiquita admits that it was not until these events occurred that it began attempts to get GTC to "honor its commitments on defense and indemnity." *Id.*

Accordingly, the court declines Chiquita's request for the $16,204.56 in fees and costs incurred by the Burnham Brown firm for work performed between September 1, 2010 and September 20, 2011, the date that GTC's insurer indicated to Chiquita that it would not tender Chiquita's defense in the Florida Action.

### ii. Expenses Not Specifically Tied to Breach of Contract Claim

GTC argues that Chiquita may only recover costs it incurred through Burnham Brown related to its enforcement of GTC's duty to defend Chiquita, and not costs for work performed on other issues.

The Ohio Supreme Court has held that where claims can be separated "into a claim for which fees are recoverable and a claim for which no fees are recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded." *Bittner*, 569 N.E.2d at 466-47. However, a court should not reduce attorney fees based on a simple ratio of successful versus unsuccessful claims. *Hollingsworth*, 861 N.E.2d at 600 (citation omitted). It is not always possible to divide attorney fees for distinct claims. *Edlong Corp. v. Nadathur*, No. 2013-Ohio-1283, 2013 WL 1294597 at *3 (Ohio Ct. App. Mar. 22, 2013). If claims "involve a common core of facts or will be based on related legal theories," it may be "difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. Thus, where multiple claims are rooted in the same allegations, facts, discovery, and legal arguments, a trial court does not abuse its discretion in awarding attorney fees for the time spent on the claims. *See Lambda Research, Inc. v.*

*Jacobs,* No. C-100796, 2013-Ohio-348, 2013 WL 454887 (Ohio Ct. App. Feb. 6, 2013); *Parker v. I & F Insulation Co.,* No. C-960602, 1998 WL 144510 at *6 (Ohio Ct. App. Mar. 27, 1998). In fact, a court may be found to abuse its discretion if it excises a portion of attorneys' fees without resolving whether it was possible for the party seeking fees to separate them on a claim-by-claim basis. *See Miller v. Grimsley,* 2011-Ohio-6049, 966 N.E.2d 932, 938-39 (Ohio Ct. App. 2011) (holding that in a breach of contract action involving a single contract and multiple claims, it was not possible to separate hours on a claim by claim basis).

In this lawsuit, Chiquita's claims arise from a single contract and a common core of facts. Chiquita alleges that GTC and/or JGLC breached the Carrier Agreement several times, including by breaching its indemnity, insurance, and subcontracting provisions. Chiquita also seeks declaratory judgment that GTC and/or JGLC breached the Carrier Agreement. *See also* Bodzin Reply Decl. at ¶ 7 (Chiquita's defense, indemnity, and insurance rights under the Carrier Agreement are intertwined). The court's in camera review of Burnham Brown's unredacted invoices confirms that is not possible to separate the fees on a claim-by-claim basis. Thus the court declines to reduce or reject Chiquita's request for attorneys' fees incurred by Burnham Brown on the basis that it is not restricted to fees stemming from the firm's work on the prevailing breach of contract claim.

### iii. Duplicative Expenses

JGLC argues that some of Burnham Brown's fees are duplicative because they are the same tasks performed by two separate attorneys in the same office. Specifically, JGLC identifies the following billing as duplicative:

- **Case Management Conferences**. For the case management conference on July 18, 2012, Robert Bodzin, a partner at Burnham Brown, billed 1.7 hours to "attending case management conference; includes time walking to and from courthouse," and Alison Greene, an associate at the same firm, billed .4 hours to "prepare to attend case management conference" and 1.3 hours to "attend case management conference." Docket No. 75, Ex. D at CFNA001011. Similarly, for the case management conference on January 9, 2013, Bodzin billed 2.0 hours to "attend and walk to case management conference" and Greene billed .6 hours to "strategize re appearance and discussion at case management conference" and 1.1 hours to "attend case management conference." Docket No. 75, Ex. D at CFNA001213.

- **Early Neutral Evaluation.** Both Bodzin and Greene prepared for and attended an Early Neutral Evaluation, totaling 10.5 hours of billable time for a session that lasted less than 3.5 hours. Docket No. 75, Ex. D at CFNA001026; Marcaletti Decl. [Docket No. 80-2] at ¶ 6.

- **Motion to Dismiss Hearing.** Greene spent 10.0 hours preparing for the hearing on the motion to dismiss held May 10, 2012, and 1.8 hours attending it; Bodzin spent 4.7 hours preparing for and attending the hearing. Docket No. 75, Ex. D at CFNA000999-1000.

- **Motion for Summary Judgment Hearing.** Greene spent approximately 2.7 hours preparing for the hearing on the motion for summary judgment held on May 9, 2013, and 2.4 hours attending it; Bodzin spent 2.4 hours preparing for and 3.0 hours attending the hearing and meeting with his associate afterward. Docket No. 75, Ex. D at CFNA001255-1256.

JGLC recommends that the court halve the number of hours billed for the above tasks to arrive at the number of hours reasonably expended, which, according to JGLC's calculations, would reduce Chiquita's damages fee award by $5,155.

Chiquita argues that Burnham Brown's staffing was required to ensure that Chiquita would have the benefit of an experienced commercial litigator and an experienced insurance coverage attorney because this dispute involves "breach of contract, breach of duties to purchase insurance, and overlapping issues involving the duties to defend and indemnify." Reply at 6. In light of the nature of this case, the court finds that the work of two attorneys with different areas of subject matter expertise in preparing for and attending the above hearings is reasonable. Another factor weighing in favor of the reasonableness of Burnham Brown's staffing decisions is that together Robert Bodzin and Alison Greene charge a discounted rate of $450 per hour for their work. This is well within the prevailing market rate in this district charged by a single partner with the same amount of experience in commercial litigation as Robert Bodzin. *See, e.g.*, *Minichino v. First California Realty*, No. C-11-5185 EMC, 2012 WL 6554401 at *7 (N.D. Cal. Dec. 14, 2012) (in breach of contract action, requested rate of $555 per hour for partner with fourteen years of experience falls within the range of other recent fee awards in this district). The court therefore declines to reduce Chiquita's damages award because the costs incurred by Burnham Brown are not duplicative.

In sum, the court awards Chiquita the amount of $212,998.75 for fees and costs incurred by Burnham Brown, which represents the $229,203.31 total for Burnham Brown's work through May 31, 2013 less the $16,204.56 incurred between September 2010 and September 20, 2011 as discussed above.

//
//
//
//
//

**IV. CONCLUSION**

For the foregoing reasons, the court grants in part Chiquita's motion for breach of contract damages and awards Chiquita damages in an amount of $283,956.750.

IT IS SO ORDERED.

Dated: October 23, 2013

DONNA M. RYU
United States Magistrate Judge